IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF a purple Motorola cellular phone seized from Nicholas Confere during his arrest on February 13, 2023 | Case No. 2:23-mj-00036 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A SEARCH WARRANT

I, Jennifer L. King, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the extraction and examination of electronically stored information from an electronic communication device seized by police on February 13, 2023 during the execution of an arrest warrant on NICHOLAS CONFERE (hereinafter "CONFERE") for a violation of 21 U.S.C. § 846 (Conspiracy to Distribute Methamphetamine.) The device is more particularly described in Attachment A and as a purple Motorola cellular telephone with a cracked front screen (hereinafter "SUBJECT DEVICE"). The electronically stored information sought under this warrant is more particularly described herein and in Attachment B. The SUBJECT DEVICE is currently located at the Federal Bureau of Investigation (FBI), Charleston Resident Agency, 113 Virginia Street East, Charleston, West Virginia.

2. I am a Special Agent employed by the United States Department of Justice, the Federal Bureau of Investigation (hereinafter "FBI"), and as such I am a "federal law enforcement

officer" within the meaning of Fed. R. Crim. P. 41(a)(2)(C) and authorized to apply for federal search warrants. I have been employed as a Special Agent of the FBI since February 2008, and I am currently assigned to work drug investigations in the Charleston, West Virginia Resident Agency of the Pittsburgh Division. Previously, I was assigned to the Long Island Resident Agency of the New York Division and served as a member of the Long Island Gang Task Force ("LIGTF"). As a member of the LIGTF, I investigated drug trafficking, money laundering, gangs, violent crimes, and other offenses. I have personally participated in over 100 arrests and search warrants and have been an Affiant on numerous federal Title III affidavits. Prior to joining the FBI, I was employed as a police officer with the Clarksville Police Department located in Clarksville, Tennessee and as a chemist with the Drug Enforcement Administration ("DEA") for approximately one year.

3. During my tenure with the FBI, I have participated in numerous drug investigations during the course of which I have (a) conducted physical and wire surveillance; (b) executed search warrants at locations where drugs, drug proceeds, and records of drugs have been found; (c) reviewed and analyzed numerous recorded conversations and records of drug traffickers; (d) debriefed cooperating drug traffickers; (e) monitored wiretapped conversations of drug traffickers and reviewed line sheets prepared by wiretap monitors; and (f) conducted surveillance of individuals engaged in drug trafficking. Through my training, education, and experience, I have become familiar with (a) the manner by which illegal drugs are imported and distributed; (b) the method of payment for such drugs; and (c) the efforts of persons involved in such activity to avoid detection by law enforcement.

4. In the course of my current duties, I am participating in an investigation relating to the distribution of controlled substances by JUSTIN BOWEN (hereinafter "BOWEN"),

2

CONFERE, other persons known, and other persons as yet unknown, in violation of the following offenses: (i) the distribution and possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1); (ii) conspiracy to commit and attempts to commit these offenses, in violation of 21 U.S.C. § 846; and (iii) use of a communications facility to facilitate the commission of the foregoing offenses, in violation of 21 U.S.C. § 843(b) ("TARGET OFFENSES").

5. Beginning on October 14, 2022, the Honorable Thomas E. Johnston, Chief United States District Court Judge in the Southern District of West Virginia, entered an order authorizing the interception of wire and electronic communications over a telephone used by JASPER WEMH (hereinafter "TARGET TELEPHONE #1). On November 8, 2022, the Honorable Thomas E. Johnston, Chief United States District Court Judge in the Southern District of West Virginia, entered orders authorizing the interception of wire and electronic communications over TARGET TELEPHONE #1, a telephone used by BOWEN (hereinafter "TARGET TELEPHONE #2") and a telephone used by ALEXANDRIA ESTEP ("TARGET TELEPHONE #3"). Intercepted communications confirmed that JASPER WEMH, JUSTIN BOWEN (hereinafter "BOWEN"), and others were involved in distributing large quantities of methamphetamine in and around Kanawha County, West Virginia and within the Southern District of West Virginia. CONFERE is one of BOWEN's methamphetamine customers and re-distributors. Interceptions expired on December 7, 2022.

6. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses. Summaries of recorded conversations are based on draft transcripts of those

conversations. This Affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this investigation.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The SUBJECT DEVICE is more specifically described as a purple Motorola cell phone with a cracked front screen. The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8. BOWEN is a methamphetamine distributor. BOWEN's communications as intercepted pursuant to court-authorized wiretaps have repeatedly demonstrated that he utilizes cellular telephones to distribute and facilitate the distribution of controlled substances.

9. CONFERE's identified role in the drug trafficking organization being investigated was to act as a methamphetamine distributor for BOWEN. CONFERE communicated with BOWEN using a cellular telephone and a landline phone at his residence. Both surveillance and communications intercepted by court-authorized wiretap confirmed BOWEN and CONFERE's use of wire and electronic communications to facilitate their drug trafficking activities.

10. On December 04, 2022, at 1:58 PM, BOWEN, on TARGET TELEPHONE #2 (Session 01284), received a call from CONFERE at telephone number (304)595-1965. The following was discussed:

CONFERE: Hey what's up?

BOWEN: What's up bitch?

4

| | |
|---|---|
| CONFERE: | What you doing punk? |
| BOWEN: | Bitch better have my money. |
| CONFERE: | I got your money, you better have my dope. |
| BOWEN: | (Laughter) I could have gotten it last night but I was with my mom. But I'm gonna go get it today. |
| CONFERE: | How long? |
| BOWEN: | (Talking over each other) |
| CONFERE: | Well you huntin? |
| BOWEN: | No huntin season is over. |
| CONFERE: | You can hunt today. |
| BOWEN: | Nuh-hu yesterday was the last day. |
| CONFERE: | Today is. |
| BOWEN: | Oh today is? Well I ain't huntin though. But after dark as soon as I got, when I get it, when it's dark. |
| CONFERE: | I got your money. (Talking over each other) |
| BOWEN: | I'll be up there. |
| CONFERE: | Bring me what you normally do. Cause I got... |
| BOWEN: | Alright. |
| CONFERE: | people fuckin every where... |
| BOWEN: | I will but listen we can't just be, don't be buying nothin. That's my money. |
| CONFERE: | I'm not. (Talking over each other) I learned my lesson. |
| BOWEN: | I took a big hit. Alright. Love you dude. |
| CONFERE: | Love you too bye. |

| | |
|---|---|
| BOWEN: | Alright dude, I'm glad you didn't try and avoid me and you just being a man about it, I appreciate it. |
| CONFERE: | I told you bub. |
| BOWEN: | You, you growed up a little bit Nick. You growed up (laughter). Alright, dog I'll be down there today. |
| CONFERE: | Alright I'll be waitin. |
| BOWEN: | Soon as I get it, Alright man peace. |
| CONFERE: | Later. |

11. Based on my training, experience, and the investigation thus far, I believe BOWEN asked CONFERE if he had the money owed to BOWEN from the methamphetamine that BOWEN had previously provided to CONFERE ("Bitch better have my money."). CONFERE advised that he did have BOWEN's money and that BOWEN better have more methamphetamine for him ("I got your money, you better have my dope."). CONFERE told BOWEN to bring him the same amount of methamphetamine that he normally brings CONFERE because CONFERE had methamphetamine customers waiting ("Bring me what you normally do. Cause I got...", "people fuckin every where..."). BOWEN told CONFERE that he would see CONFERE later that day ("Alright, dog I'll be down there today.").

12. On December 4, 2023 at 5:42 PM, BOWEN, on TARGET TELEPHONE #2 (Session 01293), received an incoming call from CONFERE, at telephone number (304)595-1965. The following was discussed:

| | |
|---|---|
| CONFERE: | What up? |
| BOWEN: | Nothing just helping my brother get his shit done. Uh, getting ready to call the dude. I'll be down there. Alright? |
| CONFERE: | How long you think you'll be? |

6

| | |
|---|---|
| BOWEN: | Give me about an hour. |
| CONFERE: | [UI] Jon-boy got a thousand, another dude got some I'm gonna try and make this money tonight, I got some money for you too. |
| BOWEN: | How much you got? |
| CONFERE: | I got your 12, plus 6 and... |
| BOWEN: | Okay. Cool, and you got a thousand? |
| CONFERE: | Probably. |
| BOWEN: | Alright cool, get as much as you can, I'll be down there. |
| CONFERE: | Alright. |
| BOWEN: | You want me to bring two or one? Two? |
| CONFERE: | I want two of 'em. |
| BOWEN: | Alright |
| CONFERE: | Alright |
| BOWEN: | Later, bye. |

13. Based on my training, experience, and the investigation thus far, I believe that BOWEN told CONFERE that he was about to call JASPER WEMH, his supplier, to obtain methamphetamine and then he would meet CONFERE ("Uh, getting ready to call the dude. I'll be down there."). CONFERE asked when BOWEN would be bringing him the methamphetamine ("How long you think you'll be?"). BOWEN told CONFERE that he would meet CONFERE in about an hour ("Give me about an hour."). CONFERE told BOWEN that "Jon-boy", a drug customer, had $1,000 for methamphetamine, another drug customer had money, and that CONFERE also had money for BOWEN that CONFERE owed BOWEN from methamphetamine that BOWEN had provided CONFERE in the past ("[UI] Jon-boy got a

7

thousand, another dude got some I'm gonna try and make this money tonight, I got some money for you too."). CONFERE advised that he wanted to sell the methamphetamine and make money tonight ("I'm gonna try and make this money tonight, I got some money for you too."). BOWEN asked CONFERE if he wanted one or two pounds of methamphetamine ("You want me to bring two or one? Two?") and CONFERE responded that he wanted two pounds ("I want two of 'em.").

14. On December 4, 2022, surveillance observed BOWEN arrive at CONFERE'S residence located at 5887 Kelly's Creek Road, Mammoth, West Virginia, at approximately 10:21 PM. Surveillance observed BOWEN meeting a male subject at a shed behind the residence. After BOWEN met the male, two males were observed leaving the area of the shed and entering the residence. BOWEN left the residence at approximately 10:37 PM.

15. On December 5, 2022, BOWEN, on TARGET TELEPHONE #2, exchanged text messages with CONFERE, on telephone number (304) 410-3095. The following is a portion of the text messages exchanged.

> CONFERE: (Session 01326 at 5:31 AM): Yo cracker don't forget to bring that with u today cause I got the money that I owe u already!!!
>
> BOWEN: (Session 01327 at 5:32 AM): Ok I'll be there let me get off have to run to house then I'll be down
>
> BOWEN: (Session 01328 at 5:32 AM): I'm already on the turnpike
>
> CONFERE: (Session 01329 at 5:32 AM): Aw

16. Based on my training, experience, and the investigation thus far, I believe CONFERE told BOWEN that he already sold enough methamphetamine to pay BOWEN the money he owed BOWEN from the methamphetamine that BOWEN provided to CONFERE on

8

the evening of December 4, 2022 ("Yo cracker don't forget to bring that with u today cause I got the money that I owe u already!!!"). BOWEN told CONFERE that he would bring CONFERE methamphetamine and collect the money after he gets off work ("Ok I'll be there let me get off have to run to house then I'll be down").

17. CONFERE was indicted in United States District Court for the Southern District of West Virginia on January 4, 2023 in single-count Indictment charging a violation of 21 U.S.C. § 846 (Conspiracy to Distribute Methamphetamine). A warrant was issued for CONFERE's arrest in connection with that Indictment.

18. On February 13, 2023, CONFERE was arrested at his residence located at 5887 Kelly's Creek Road, Mammoth, Kanawha County, West Virginia. During CONFERE's arrest, officers found the SUBJECT DEVICE in CONFERE's possession, and CONFERE admitted that the SUBJECT DEVICE belonged to him. The SUBJECT DEVICE was powered on when it was seized. Since the SUBJECT DEVICE was seized by officers, it has been securely kept such that its contents would be preserved in anticipation of a search warrant.

19. Based on my training, experience, and the investigation thus far as described herein, probable cause exists that the SUBJECT DEVICE contains evidence of drug distribution by CONFERE. Specifically, investigators believe that evidence of drug-related communications involving BOWEN and CONFERE, and their co-conspirators and confederates, along with photographs or other information more fully described in Attachment B, is currently located within the electronic memory of the SUBJECT DEVICE. The requested warrant will allow investigators to ascertain the relative involvement of CONFERE in the illegal activities described above.

## TECHNICAL TERMS

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Cellular telephone: A cellular telephone (or mobile telephone, or wireless telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

21. The SUBJECT DEVICE is a cellular telephone. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Certain devices utilized by the user may

10

not be locked in the same manner and some devices will be more easily accessed by the examiner.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. The information would include but not be limited to text messages, MMS, and messages to or from co-conspirators on various applications like SnapChat, Instagram, and Facebook. Phone logs, usernames, GPS locations, and images are also stored on electronic devices. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence is stored within the memory of the SUBJECT DEVICE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the

11

SUBJECT DEVICE. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how the electronic device was used, the purpose of its use, who used it, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether electronically stored information is evidence may depend on other information stored on the device and the application of knowledge about how electronically stored data works. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not

12

limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

25. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is probable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

26. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICE described in Attachment A to seek the evidence described in Attachment B.

Respectfully submitted,

Jennifer L. King
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me by telephone pursuant to Fed. R. Crim. P. 41(d)(3)

On Feb. 22, 2023:

HONORABLE DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE

13